EDWARD RUDOLPH FLADUNG *v.* STATE
OF MARYLAND

[No. 194, September Term, 1967.]

*Decided August 13, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Sherman W. West* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was found guilty generally by the court sitting without a jury under an indictment charging storehousebreaking, larceny, and receiving stolen goods. He was sentenced to a

term of four years imprisonment. On this appeal, he contends that the evidence was insufficient to support his convictions.

The essential facts are these: November 8, 1966 was a holiday and the Seabrook Elementary School was not in session. Sometime after 2:00 p.m. on that day, Gertrude Hughes, the school's Principal, went to the school, unlocked the front door and, once inside, discovered that several classroom doors had been opened and damaged and that a window had been broken in classroom #7. Upon going to the school cafeteria, the Principal found that a large quantity of food was strewn about the floor and that other food, amounting in value to over $100.00, was missing from the cafeteria refrigerator and cold storage room, as well as several pieces of cafeteria equipment.

The evidence showed that the Principal and three other persons (the head custodian, cafeteria manager, and one teacher) had keys to the school but none of the others were present on the day of the breaking. The head custodian had locked the building on the previous night at approximately midnight.

Classroom #7 was a ground level room, located to the rear of the school's multi-purpose room and was not visible from the road. The window in classroom #7 extended from a few feet from the floor to the ceiling, and ran almost the entire length of the room, the window being made up of a number of sections approximately three feet by three feet. The glass from the broken window was found inside classroom #7 on a shelf under the window. The school's Principal had been in classroom #7 on November 7 and the window was not then broken.

The police arrived at the scene about 4:00 p.m. on November 8. Detective Sergeant Spencer checked for latent fingerprints and discovered "a fingerprint on the inside on the glass of the window" in classroom #7. The window "had been broken and opened" and the fingerprint was "lifted from the window." Only one pane in the window had been broken and the latent print was "lifted from the glass itself." [1] No other latent finger-

---

1. A latent fingerprint was described and characterized at the trial by an F.B.I. expert in these terms:

"The palm and surfaces of the fingers are covered by raised ridges, known as friction ridges. These ridges have pores which exude perspiration. The fingers also come

prints were lifted during the police investigation of the crime. Asked on cross-examination "where the print was located," Detective Spencer responded :

> "* * * it's a pull-out type window, if I remember correctly. The print was inside on the glass, a little bit above—right on the inside of the window when it's opened partly."

The print was positively identified by F.B.I. experts as that of the appellant's right ring finger.

Appellant did not testify at the trial and offered no evidence on his own behalf. After his motion for judgment of acquittal was denied, the trial court stated that the case was one where "Other than the matching of the fingerprint, there is no evidence whatever that places the defendant on the scene, nor is there any evidence that the defendant was ever known to have had any of the property in his possession * * *." After noting that appellant's latent fingerprint was found on a pane of the window which had been broken and that it could reasonably be inferred that this was the point at which access to the building had been gained, the trial court stated that in the absence of any explanation from the appellant as to how his fingerprint was impressed on the window, it was convinced beyond a reasonable doubt of appellant's guilt.

I

Appellant contends that evidence of one latent fingerprint, by itself, is not legally sufficient evidence upon which to base a conviction in the absence of a showing by the State that the print was impressed at the time of the offense. Appellant particularly stresses that there was no evidence adduced at the trial to show how long the print had been on the window. He urges that there was an infinite number of opportunities for

___

> in contact with the hair or hairy parts of the body, picking up oils. Now, this perspiration and oil will coat the surface of the friction ridges. When an object is touched this perspiration and oil is transferred to the object. These latent impressions are usually invisible and require some type of processing to produce visibility."

his print to have been impressed on the window weeks or even months prior to the offense, particularly since the school was a public building and, as such, accessible to the general public.

In *Murphy v. State,* 184 Md. 70, 85-86, the Court of Appeals held that the use of fingerprints is an infallible means of identification. It has been generally recognized that where, as here, the only evidence of guilt of the accused consists of his fingerprints found at the scene of the crime, the evidence, to be legally sufficient to support a conviction, must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. See *McNeil v. State,* 227 Md. 298, and authorities therein cited. We recognized in *Lawless v. State,* 3 Md. App. 652, that such "other circumstances" need not be those completely independent of the fingerprint and may properly include circumstances such as the location of the print, the character of the place or premises where it was found, and the accessibility of the general public to the object on which the print was impressed. We said in *Lawless* at page 659:

> "* * * A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking. *United States v. Hayes,* 385 F. 2d 375 (4th Cir. 1967). We also feel that the rule in *McNeil* does not compel the State to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only 'with evidence of

other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed. Thus, in view of the other circumstances, it may not be necessary for the State to produce evidence by *each* person who may have authority or apparent ability to admit an accused to the premises lawfully, that he did not authorize that person to enter the premises."

We have recently considered the application of these principles in a number of cases where the State's evidence was largely limited to the discovery of the accused's fingerprints at or near the scene of the crime. In some of these cases, we found the evidence insufficient to sustain the conviction. See *Gray v. State,* 4 Md. App. 155; *Mills v. State,* 3 Md. App. 693; *Musgrove v. State,* 3 Md. App. 54. In other cases, both this court and the Court of Appeals of Maryland have found such evidence to be legally sufficient to convict. See *McNeil v. State, supra; Debinski v. State,* 194 Md. 355; *Couser v. State,* 4 Md. App. 543; *McGhee v. State,* 4 Md. App. 256; *McCargo v. State,* 3 Md. App. 646; *Hannah v. State,* 3 Md. App. 325. In *Lawless* we reviewed at length the cases from other jurisdictions involving the question of the legal sufficiency of fingerprint evidence to convict, including all of the cases presently relied upon by the appellant herein. It would, therefore, serve no useful purpose to again review the facts of any of these cases, particularly since each case necessarily must be decided on its own facts.

On the record before us, we are persuaded that the judgment of the lower court sitting without a jury was not clearly erroneous, (see Maryland Rule 1086) as the evidence of the attendant circumstances with respect to the finding of appellant's fingerprint on the broken window was such that the trial judge could properly conclude that appellant was present at the time the crime was committed and that he was, in fact, the criminal agent. The evidence showed that the window in class-

room #7 was not broken on November 7 when the Principal observed it that day, but was broken when she next observed it shortly after 2:00 p.m. on the following day. As classroom #7 was not visible from the road, being hidden from view by the school's multi-purpose room, we think it a particularly rational inference that the person who broke the window in that classroom entered the school and stole the food and equipment from the cafeteria. While there was no evidence as to how long appellant's fingerprint had been on the window, the evidence did show that his was the only print lifted therefrom, and that his print was so positioned on the inside of the window as to make it reasonably inferable that the person who entered the building through the window was the same person who left his print thereon. As the print was on the inside of the classroom window, rather than the outside, it was not located in an area readily accessible to the general adult public. Under these circumstances the fact that three persons other than the Principal had keys to the building, and that none of them testified, would be a fact of no vital consequences in determining the legal sufficiency of the evidence to support the convictions. Compare *Musgrove v. State, supra*. And while it may be true that appellant may have had many opportunities to have impressed his print on the window at a time other than the commission of the crime, such speculation does not take the place of evidence in the case and, as we observed in *Lawless,* the court cannot supply evidence that is lacking. We conclude, therefore, that there was legally sufficient evidence to support the convictions and accordingly so hold.[2]

*Judgment affirmed.*

---

2. A general verdict of guilty on two inconsistent counts, as here (larceny and receiving stolen goods), is, of course, defective and the defendant has a right to require the trier of facts to specify on which of the counts he is guilty. The right may, however, be waived where the matter was not raised below. In this case, the question was not raised below nor on appeal. See *Thomas v. State*, 2 Md. App. 645, 648-649, and cases there cited.